We need a break before the third one. The first case is McClendon v. Springfield. Yes, sir. All right. Who's arguing? Sure. We've read everything you've given us, so we'll wait to see what you have to say. May it please the court. In Stanley v. Suggs, this court recognized that a state court defamation judgment is dischargeable absent knowledge of falsity, a holding compelled by the U.S. Supreme Court's decision in Geiger that recklessness does not meet the willful and malicious injury standard. That Mr. McClendon entertained serious doubts about the truth of the statement is not enough. There must be evidence. He knew the defamatory statements were false at the time he made them, and there simply is no such evidence. Mr. McClendon was the only witness, and the state court judgment and verdict were the only exhibits. Mr. McClendon testified consistently, clearly, unequivocally. He always believed that Springfield stole from him. Now, the district court, of course, the bankruptcy court, was free not to credit that testimony, but that would have just gotten the parties back to even ground. The fact that the bankruptcy court chose not to believe Mr. McClendon about these facts would not, of course, establish that the opposite was true. There simply was no other evidence, nothing that the bankruptcy court could have viewed as circumstantially establishing that Mr. McClendon knew the accusation of theft was false when he made it. Literally nothing. Mr. Springfield can point to only one thing. In his entire brief, only one thing that he contends would support an inference of knowledge of falsity, and that's that Mr. McClendon exaggerated the amount of the theft or purportedly exaggerated the amount of the theft. Just to review, there were six defamatory statements. In four of them, Mr. McClendon either did not say the amount of the theft or he said it was in the hundreds of thousands of dollars, which was consistent with his testimony at trial. In two of the statements, he said the theft was a million dollars, and at trial, at the bankruptcy trial, he said a million dollars was not stolen. Now, of course, that's not the defamatory statement. Mr. Springfield's not saying there's any direct evidence that Mr. McClendon knew the accusation of theft was untrue. He's making a different argument. He says, well, because Mr. McClendon admitted exaggerating the amount of the theft, the bankruptcy court could have inferred that he knew the defamatory statement itself was false. The jury found defamation charged regarding intentionality. I'm sorry? Was the jury charge originally that led to the judgment? The jury charge was basically what I would call your garden variety – the question was a garden variety defamation, you know, falsity or reckless disregard, an alternative. Very similar to what you've confronted in other cases and what other courts around the country have confronted and held that, for that reason, that's the reason the bankruptcy court properly held a trial. The bankruptcy court, quite rightly, looked at that and said, could be either one. You had a trial for the bankruptcy court to decide which one it was? To decide – correct. That's exactly right, Your Honor. He listened to the witness and made a decision? Correct. That's exactly right. In this case, however, the problem is without any evidence. And to defend the bankruptcy court a little bit, I don't think the bankruptcy court ever got around the idea or – when you read the opinion, which is very thorough, there's no mention of this rule that there has to be knowledge of falsity. I'm honestly, from the record, it does not appear to me the bankruptcy court – Well, the bankruptcy court cites exactly the law you're relying on, Geiger, Miller, and Suggs. Correct. And then the bankruptcy court is very explicit that to the extent that the verdict in state court could have been based on recklessness, that wouldn't suffice. But then my memory is that the bankruptcy court then made the explicit finding that there was intentional falsehood here and particularizes which ones. And I thought even the jury verdict said, well, as to these statements, there wasn't intentional falsehood. No. Wasn't it? The jury verdict found they were made either with knowledge of falsity or with reckless disregard for the truth. Okay, but why do I remember that there was a particularized verdict as to several statements that weren't qualifying? Okay, let me back up. The charge was a little weird in this case and probably improper. There was a qualified privilege question. And the way it's supposed to work in Texas law is you get – as an employer, you have a – Well, just if you could answer my question, isn't it true that there were statements that were distinctly found not to have been made with falsehood, either recklessness or intentionality? Weren't there some that were distinguished by the jury verdict? Yes. There were some the jury found – oh, I'm sorry. I misunderstood your question. Yes, the jury did say answer no to some of the statements. Okay, and then as a result of that, you've got an explicit finding that under the circumstances, the record before the bankruptcy court, including McClendon's testimony, under the circumstances, contextual analysis, showed an objective certainty of harm. That is correct. So is your position to us not that there's legal error but just that that is a clearly erroneous conclusion of fact? Is that your argument today? Well, I think our argument is twofold. I am going to argue that that is a clearly erroneous conclusion of fact. I am also arguing that the bankruptcy court, as I read it, applied the two-part test enunciated in Miller and Williams to which Your Honor is referring, subjective, objective. But there is – in a defamation case, there is a separate – I don't know that it's a separate requirement. However you view it, whether it's a separate requirement or part of that two-part test, there must be knowledge of falsity. What was the amount of money that he said was stolen? At trial, he said he didn't really know. What statements was he making that were – he said the guy stole this much money. How much did he say he stole? Oh, in the defamatory statements, alternately, twice he said a million dollars. In other instances, he said hundreds of thousands. Well, why can't you just – why can't a trial of the fact infer from a repeated accusation that someone is stealing a million dollars and he knows that's not true, that he's lying? Well, I think you could infer that he's lying. Well, that's exactly what – why did the facts themselves support this finding? Right. Two things I would say to that, Judge, and I don't think that is what the facts support for two reasons. Number one, the fact that he knew it at trial is no evidence that he knew it at the time he said it. And you've written on that point, Your Honor. When you wrote Miller, you made that very clear. You said there must be evidence not that he knew it but that he knew it at the time he said it. And that's what's missing here. Sure, there's evidence that at trial Mr. McClendon now knows or thinks he knows that it wasn't a million dollars. That's not evidence he knew it back – He now knows there was no theft or he didn't know it was a mountain. Mr. McClendon will go to his grave screaming that there was a theft. I'm sorry? I said he will go to his grave claiming there was a theft. No, he said at trial he knew now, now, that the theft did not reach a million dollars. There's no evidence he didn't know it at the time. In fact, all the evidence is to the contrary. Mr. McClendon talked about the fact that really to this day he's not sure how much, what the extent of the theft was. It took them a great deal of time and investigation. They brought in a forensic auditor. All of that was after he made the statement. But we're not relitigating the defamation ruling. That's a nine-day trial and you can read it in the transcript that there's immense earnestness on both sides. But what's before us is the finding about objective certainty to harm, the Miller test. And when the district court says under de novo review it's looked at exactly what the bankruptcy judge said and they all say the evidence, including McClendon's testimony, demonstrates that he had an intent to harm, why doesn't that suffice? Because in the defamation context, again, there has to be knowledge of falsity. Otherwise, I mean otherwise you could get non-discharge for negligent defamation. I mean you can have an objective substantial certainty of harm from a negligent defamation. I think we would all agree on that. And there's no possible way under the willful and malicious standard that that would get you there. The defamation is a special beast. And that's, in our view, that's the mistake the bankruptcy court made is not understanding. If you accuse someone of stealing a million dollars and you don't know if it's a million dollars or $50,000, it's hard to say as a matter of law that one cannot reasonably infer from that that the guy is, he knew at the time that that statement was false. I disagree completely. I think that establishes. Well, because it's a lot of difference when you start talking about the amounts of money involved as well in terms of injurious impact. How much did the jury award in this case? $360,000? $350,000, $360,000. But, Judge, I just would point this out. I think that would undo a great deal of defamation law. There's a difference between recklessness and knowledge of falsity. Those are two different things. And there's all that line of cases that I know you know, the St. Amant case and the Butts, you know, the Georgia football case, where we talk about making statements recklessly not knowing. There's no question that you're correctly articulating the law. The question, though, is a factual one. The question is what reasonable inference can be drawn from the evidence. You just assert that he didn't know, that he didn't know. Well, okay. The question is did he know? And you say, well, there's no evidence of that. Well, what else? The very fact that you make the accusation, and you do have a jury that thought it was at least reckless to do that. How could it be reckless if the statements were true? Well, I think it probably could be reckless if you don't know that it's true. I mean, again, the inquiries at the time. So you could say a great many things recklessly that turn out later by sheer luck to be true. But, again, there's a huge difference in defamation law between recklessness and knowledge of falsity. Those are two different things. And Geiger, unless I'm misreading it badly, Geiger has to stand for the fact. Let me ask you a different question. Suppose the jury had been asked, given a Rule 49 submission like in federal court, and they asked a direct question of whether or not they found that he knew at the time. Would there have been evidence to sustain that verdict? Would there have been evidence in the state court record? The answer to that is I know it, but it's not in your record. Yes, I think the jury could probably. And that's a very good point. You know, this would be in a very different posture before you had the state court transcript been introduced. But, counsel, what that says is that a trier of the fact can take this same set of facts and find intent. Those facts weren't before. Because one jury had already done it. It was before the bankruptcy court. Is McClendon himself saying that, quote, a million dollars was never stolen? Correct. So why can't the bankruptcy court find from that statement of himself that, therefore, there was an intentional lie when he said a million was stolen? Again, because as Justice Higginbotham, Judge Higginbotham wrote in Miller, evidence that McClendon said at the time of trial he knew a million dollars was not stolen is not evidence he knew in 2007 when he made the defamatory statement that a million dollars was stolen. That's what your position reduces to? I think that's 50 percent of our position, yes. Did he make that distinction clear in his testimony? He did not. He wasn't believed. He did not. It's not, of course, and I think maybe that's the fundamental point. A little late. Not our burden. Not our burden. The banks are the – okay. I mean, there's got to be affirmative evidence. You can't just say witness testified X, I don't believe him, so Y must be true. Well, but your only authority for that is the Seymour case, and that's your single piece of authority for that. And when you read that decision, that was because a trial court said, I disbelieve everything you've said. It was a categorical denial of the truthfulness of everything. Well, therefore, logically you would say then you can't pick and choose and say, but I believe this part. That isn't what was said here. It wasn't a statement by the trial judge that I disbelieve everything he said, but, in fact, I now believe a little bit. Right? So if a witness gives a false exculpatory answer, that's still of incriminatory value. Well, I would disagree with that statement, but let me – But what authority would you have to disagree with it? Well, as you've said, that's the only authority I have. That's the only authority. But let me just say this. There is no finding of lack of credibility on this statement. You've raised, I think, a very good point. The bankruptcy court was very specific, as you note, in finding what was not credible in McClendon's testimony, and this was not part of it. In other words, there was a finding McClendon was not credible on his subjective intent to injure and a finding he was not credible on the objective certainty of harm. There is no finding he was not credible in his belief that the theft occurred or even in exaggerating, allegedly exaggerating the amount. I mean, I again would simply say there is no evidence – the only testimony, and I don't think I'm being clear from the questioning. I can tell I'm not being clear. The only testimony that we're talking about is McClendon saying at the time of trial, I know a million dollars wasn't stolen. The reason you aren't – I think you're being clear. To me, it's just a shift of focus. I thought your brief primarily was saying no objective certainty of harm. And therefore, the calls to the bank about don't hire this guy look really difficult for me to comprehend. But I think today what you're saying now is we continue adamantly to deny any knowledge of falsity. That is our frontal position. Yes, and to be clear, I'm a little – I will confess some confusion. It is clear to me after Geiger and the other circuit opinions that knowledge of falsity is a requirement. I'm a little unclear as to whether it's some sort of special requirement for defamation cases or it fits within the two-part test. But it is a requirement. So I'm not changing my argument. I still believe everything we said about subjective intent and objective certainty. I'm telling you I don't think you need to get there. I think you can simply look at this and say no knowledge of falsity in a defamation case ends the inquiry. So your position is the Texas conviction was based on recklessness? Could have been. Well, if it's not based on recklessness, it has to have been based on – Right. I mean, as all these cases say, your problem is you don't know. And where you don't know, you have to determine it de novo. In other words, the verdict, to be more precise in my answer, the judgment and the verdict are insufficient evidence of knowledge of falsity because they could be based on – But you agree the bankruptcy court saw exactly that distinction in describing the law and specifically said I'm not basing this on recklessness? Yes. The bankruptcy court applied the two-part test without any regard for knowledge of falsity. And let me be clear in one thing you said that I want to make sure we understand. There is no finding by the bankruptcy court of knowledge of falsity by McClendon. No such finding that he knew the statements to be false when he made them. The bankruptcy court simply never considered that question. Okay. Save some time for rebuttal. Thank you.  Yes, ma'am. Please, the court. The bankruptcy court had the state court judgment as far as it went, which led – which found the statements that were made. On his last point. Yes. Is it correct the bankruptcy court made no finding of knowledge of falsity? I thought findings 22 and 23 were explicit findings by the bankruptcy court that he intentionally made false statements. That's what I thought, Your Honor, as well. Well, you thought or you – do you know these findings? No. Okay. Start with your argument then. I do not know. Continue. That's fine. But I did think that. So the whole issue was whether or not the bankruptcy court could make a separate finding that he knew they were false and that it would cause harm. And that could be either subjective or objective. The objective standard allowed the bankruptcy court to infer based on reasonable inferences whether or not Mr. McClendon was making those statements to cause harm and knew that they were false. He was bound by the jury finding that the statements were made and what the statements were, which were $400,000 million and over a million. And the bankruptcy court heard Larry McClendon, assessed his credibility, listened to his statements, which included I don't know how much. That combined with I did say over a million dollars, and yet I can't even say how much, and yet I know it's not over a million dollars. That's enough for the bankruptcy court as a fact finder to conclude that he made false statements and that he intended to injure. Now, I think that if I'm correct, their attack on that proposition is that you have a jury finding of good faith, number one. Yes. Number two, I think they're saying you can't use collateral estoppel the way that this court did because the findings under Texas law could have been based on recklessness. So collateral estoppel doesn't end. And number three, the only testimony that was actually heard was the testimony of McClendon, and he denied it. So you put those three together, and you can't have your meeting the burden of proof you had to meet. It's some mix of those three. So I'll take each one of those. The good faith is confusing, and that is because in order to get the qualified privilege in the first place, there must be an initial showing of good faith. The question is what does that good faith relate to? Does it relate to good faith of knowledge of the statement or good faith that you were making the statement in a context that would cause the privilege to arise, such as employment? I've made the statement, and it related to my business. Therefore, the privilege applies. It's supposed to be made by the court. It's a judge-made law. This trial judge decided not to make it on her own, that she would submit it to the jury. It caused confusion. The jury figured it out, understood that, yes, we think that that privilege should apply, and then held that some did not meet that standard, but some did, and followed the clear and convincing that it was intentional or, and the standard is or reckless. So it only gets you that far, but we have collateral estoppel up to the statements were made and that they were at least recklessly made. But that doesn't get you all the way as you, and the bankruptcy court understood that. So he had to go the next step. The next step is to hear and assess McClendon himself and his credibility. So he was- And I'm just jumping ahead because of time, but then it comes down to Seymour and their interpretation of Seymour to say that McClendon's denials cannot then add the plus that you need. Well, in Seymour, the judge made the opposite finding. He said, I don't think that you've met that burden. But in this situation, the judge acted as the fact finder, was entitled to listen to Mr. McClendon, believe him, not believe him, take what he wanted to believe as true, which is when he said, I don't know how much money was there, and he could have inferred that he knew that at the time the statements were made at any time. So as a fact finder, he drew that conclusion, and that's the distinction between Seymour. And I forgot your third point. No, I think, well, that was it. That's the good faith, it's the collateral estoppel, and that's Seymour. That's right. So everything was done in this case. The only other thing that I would just point out is if we look at the Supreme Court cases in that Cavajo versus Geiger case, we're dealing with negligence, a negligence malpractice situation, and then recklessness up above there. And in the defamation case, and in this case where we got past the qualified privilege, we're dealing with an intentional tort coming down to a reckless. And the idea, I think, of Section 523A6 is that it applies to intentional torts and not to negligence, negligent torts. That's what we have here in the defamation. We have intentional torts. This is what it was meant to apply to. We're not talking about a contract where there's a tort on the side. This is exactly the kind of tort that this provision was meant to apply. And we'd ask the court to affirm this. Let me take you back to the state court case itself, the jury verdict. In the trial of that case, I'm uncertain as to what the nature of the damages that were presented for the basis of the jury award. Under general principles of defamation law, so long as it's not a public figure, we don't have a First Amendment settlement interference with it, you may cover general damages, which, for lack of a better word, is what the jury thinks is a loss of general reputation, whatever. And you can, of course, also recover more specific damages, such as actual juridic, economic loss, et cetera. What was the basis of the jury award here? General damages. What? General damages. The reason for my question is that I wanted to try to expose as best we could the nature of the harm that was demonstrably shown, because I think that also bears upon the intent with which one acts. The jury found both loss of reputation and mental anguish. And there was lots of testimony about Mr. McClendon being extremely angry, wanting to cause harm. It was our position through the whole trial was his whole purpose was to destroy Bobby Springfield. And, in fact, he brought theft and breach of fiduciary duty claims, civil theft and breach of fiduciary duty claims, and the jury found no civil theft, no breach of fiduciary duty claims. And on a happy note, he had had him indicted in theft over $300,000 with the Dallas DA. We were able to take that charge over, and they dropped it, and he's back living a normal life again. Well, when you say they dropped it, they just reduced it to criminal trespass, correct? No, that's a separate thing. On the night that he was suspended but not yet terminated, he went back in to try to download his computers to save the record so he wouldn't be accused of anything, and they charged him with criminal trespass, and he negotiated that down to negligent trespass and deferred adjudication. But they later indicted him for theft over $300,000, and that was what was dismissed after we showed they couldn't prove it by preponderance. They're not going to prove it by it. They dropped it. I've got one other question. Paragraph 42, the finding was made that when the false statement is an accusation of a crime, that that is per se objective certainty of harm. Are you defending that, or is that a mistaken statement that's not relevant to the outcome? No, I think that that's – I would defend that, and I think the Sixth Circuit came down that way. If it's per se, then there would be a finding that there is substantial certainty of harm in a per se defamation. So I think the bankruptcy court can be – decision can be supported on that basis alone as well. Okay, and your authority is what's the Sixth Circuit case that you say? It's actually – it is – When the defamatory statement is a false accusation for a crime, that will always lead to a non-dischargeability in your opinion? I think that's what the case Wheeler v. Laudani is actually cited in Appellant's brief, 783 F. 2nd. 610. Sixth Circuit out of 1986 – oh, actually, it's a later case by the Sixth Circuit. Kennedy v. Mustaine, 249 F. 3rd. 576, 2001 case, where they said if it's per se, then that's enough to make it dischargeability. It's pernicious itself, I believe. Thank you. All right, thank you. Mr. Baruch. Thank you, Judge. Judge Higginson, findings 22 and 23, there is no finding of knowledge of falsity. There's a finding that Mr. McClendon made the statements intentionally and that they were false and that they engendered a substantial objective certainty of harm. But there is no finding that he knew them to be false when he made them, and those are very distinct things. They may be important subtleties. Could you read finding 23 out loud? Yes. McClendon intentionally made the false statements to the designated third parties regarding Springfield in a manner and under circumstances substantially certain to cause injury to Springfield. We don't dispute that. You don't dispute it, but I would have thought, therefore, that that suffices. No, because he could still have known they were true. I mean, he could have made a true statement. I mean, they later turned out to be false. We know they are false, but that doesn't mean he knew them to be false. You know what? A hypothetical will illustrate this very easily. The police come to me, knock on my door, and say they have arrested my neighbor and they have an airtight case against him for assaulting my child. I then, based on that, go around the neighborhood telling everyone, oh my gosh, my neighbor assaulted my child. Three days later, the police come back to me and say, oops, we ran the DNA. We got the wrong guy. I have made a false statement. I have clearly made it under circumstances subjectively certain to cause damage to my neighbor. But it's dischargeable because I didn't know it to be. It was false. I made it intentionally. I knew it was going to cause him harm, but I believed it to be true. And that's the point. There has to be knowledge of falsity. That is the argument we are making. And to be clear, Judge, what we're saying is you don't even have to get to the two-part test. Every court in the country to consider this issue, so far as I know, has held that for defamation, if you don't have knowledge of falsity, you must discharge. And I would respectfully disagree with the interpretation of Kennedy by the Sixth Circuit because Kennedy is the case I just described. Kennedy is a case the Sixth Circuit went out of its way twice in that opinion to say they kept making the defamatory accusation of a crime after DNA conclusively disproved it. But when McClendon later says the million dollars was false, how can you interpret from that to be, but I only just now realized that? Is that what your argument is? The record is silent as to when he first knew it. Again, it's like my hypothetical. That's where jurors make inferences in the district court. And they say, well, look at the concatenation of false statements. And if you look at the total context of multiple falsehoods, we're finding that at the time this was his deliberate present intent. That his statement in 2013, after all the dust has settled and all the investigation has been performed, that I now know that there was theft but it wasn't a million, constitutes evidence that in December 2007, right when the theft had first been discovered, he already knew. I will say two things to that judge. If that's the law, we lose. That is not the law. I mean, that is just not a reasonable inference. That is the essence of million dollars. I remember. You would know much better. But his contention of theft was a salary theft, that the man had given himself a higher salary. It wasn't we don't know what monies he's taken. No, no. That was only part of it. What he said at trial was that was the part he was able – what he said at trial basically was that was the part I was able to get the easiest handle on. We tried to figure out – there were some loans and other things. And what he said at trial was I truly never did get to the bottom of how much money he stole. He just highlighted the salary as saying that's the one I can sit here today and give you a definite number on. Okay? And I think that – but I think to go back to that hypothetical, that's the reason. That sort of hypothetical illustrates why, again, every court, even the 6th, which had a little bit of confusion in the law, the 6th and the 9th both have explicitly held that if you don't have evidence of falsity, knowledge of falsity, at the time, you have to discharge. The 7th has not explicitly held that, but its bankruptcy courts all hold that that's the law of the 7th Circuit. They view the 7th as – the 7th Circuit has cited Wheeler approvingly. And you're not denying McClendon had every opportunity when he testified under oath to say I didn't know then and I still deny that it was false. He absolutely said it, and the trial court said I don't believe him. Your position is that as a matter of law, that couldn't suffice. Wait a minute. I'm not sure I – ask me the question again. McClendon testifies extensively in front of the bankruptcy court. And he repeatedly says I didn't know it was false. I didn't know it was false. And at the end of that, the court, demeanor and put it all together, says I don't believe you. No, the court did not – I'm sorry. The court did not make any credibility. The court made two credibility findings. And I don't know. I think that's – I don't know that it's legally binding, but I think it's interesting and persuasive. The only credibility findings are that the court – and they're 24 and 25, and I'm looking right at them. She finds it not credible when McClendon denies that he could have caused injury to Springfield, and she finds it not credible when Springfield says that he had no intent to injure Springfield. She does not make any credibility finding relating to his denial of knowledge of falsity. Thank you. Thank you.